145 So.2d 889 (1962)
Christ LaMONTE, Appellant,
v.
STATE of Florida, Appellee.
No. 2265.
District Court of Appeal of Florida. Second District.
October 24, 1962.
*891 Frank Ragano, Tampa, for appellant.
Richard W. Ervin, Atty. Gen., Robert R. Crittenden, Asst. Atty. Gen., Lakeland, for appellee.
SMITH, Judge.
The defendant, Christ LaMonte, appeals from his conviction of the crime of armed robbery, contending that the evidence was insufficient to sustain the verdict, and that the trial court erred in refusing to have portions of the testimony read to the jury at their request.
The State contends that the defendant's motion for new trial did not raise the question of the sufficiency of the evidence and thus the defendant is precluded from raising this point on appeal. The State cites the case of Davis v. State, 1904, 47 Fla. 26, 36 So. 170, in which the Supreme Court refused to consider such a point on appeal because the defendant's motion for new trial did not "in any way question the sufficiency of the evidence to sustain the verdict." However, we note that in the present case, one of the defendant's grounds in his motion for new trial was that the verdict was "contrary to the facts." Although this may not be the technically correct manner in which to challenge the sufficiency of the evidence, we hesitate to say that the defendant is thereby precluded from raising the question on appeal. Under the authority of § 924.32(1), Florida Statutes, 1961, F.S.A. and Rule 6.16, Florida Appellate Rules, 31 F.S.A., this court may, in its discretion, if it deems the interests of justice to require, review any things said or done in the cause which appear in the appeal record.
Anthony F. Nottage, Jr., the victim of the crime, testified that the robbery took place while he was transporting money belonging to his employer from a bank to his employer's place of business, a Tampa pharmacy. As he drove into an alley at the rear of the pharmacy, he observed an automobile parked in the middle of the alley. One of the three occupants of the car got out and advanced upon the victim. He was wearing a hat, and his face was covered by a rubber mask. Standing at the driver's window and brandishing a pistol, the bandit demanded and received the money from the victim. He then rejoined his two companions in the other car, and the three men sped away. The victim made a notation of the license number of the car and notified the police.
Investigating police officers testified that, a short time after the robbery, they found the automobile, bearing the license number furnished them by the victim, in the driveway of the defendant's place of residence; that the engine was warm; and that, when the defendant returned home (several hours after the robbery), he admitted to the officers that he was the owner of the automobile. The officers also testified that they found a rubber mask while searching in a closet in the defendant's home, and that the closet contained, among other clothing, some costumes.
The victim testified that he did not recognize the defendant as one of the robbers and that the person who held the pistol was larger than the defendant. The victim testified further that the mask found by the police officers at the defendant's home was the "same type mask" as and "similar" to the mask worn by the robber.
There was another witness to the robbery, but he testified that he could not recognize or identify anyone other than the victim.
*892 From the testimony as outlined in the preceding paragraphs, we see that the case against the defendant was based entirely upon circumstantial evidence, and that the defendant was connected with the crime in only two ways: First, the automobile used in the robbery was found in the defendant's driveway, and he admitted that he owned it. Secondly a mask similar to that worn by the robber was found at the defendant's home.
In the absence of a statute providing for the presumption or inference, it cannot be inferred in criminal cases that the owner of a car, merely because of his ownership, was operating or in the car at a particular time. People v. Hildebrandt, 1955, 308 N.Y. 397, 126 N.E.2d 377, 49 A.L.R.2d 449; State v. Lloyd, 1951, 233 N.C. 227, 63 S.E.2d 150. And see Annotation 49 A.L.R.2d 456, 459. Florida has no statute, applicable to criminal acts, providing for any presumption or inference connecting the ownership of a motor vehicle with its operation. The presumption arising by virtue of § 51.12, Florida Statutes, F.S.A., is limited to civil actions; and § 186.55, Florida Statutes, F.S.A., is applicable only to violations of municipal traffic ordinances.
"When circumstantial evidence is relied upon for conviction in a criminal case, the circumstances, when taken together, must be of a conclusive nature and tendency, leading on the whole to a reasonable and moral certainty that the accused, and no one else, committed the offense. If the facts in proof are equally consistent with some other rational conclusion than that of guilt, the evidence is insufficient. If the evidence leaves it indifferent as to which of several hypotheses is true, or merely establishes some finite probability in favor of one hypothesis rather than another, such evidence cannot amount to proof, however great the probability may be. It is the actual exclusion of each other reasonable hypothesis which clothes mere circumstances with the force of proof. Circumstantial evidence which leaves nothing more than a suspicion that the accused committed a crime is not sufficient to sustain a conviction." (Emphasis theirs). Harrison v. State, Fla.App. 1958, 104 So.2d 391.
Standing alone, the evidence concerning the ownership of the automobile was insufficient to sustain the verdict.[1] Therefore, the question concerning the jury's request becomes most important.
The jury interrupted their deliberations, returned to the court room, and announced that there were two questions which they wanted to ask: (1) whether the rubber mask was found on the floor of the closet or whether it was found in the attic; and (2) whether there was a rear door as well as a side and front door to the home of the defendant. The jury requested that the testimony on these matters be repeated, or that the answers to the questions be supplied by the court. The court replied that it was not able to comment upon the evidence; that it could not tell the jury what was in the record and what was not in the record; and that the jurors had heard the testimony. The court then directed the jury to return to their deliberations.
Thus, the jury seems to have been in doubt as to exactly where in the defendant's home the rubber mask was found. The police officer testified that he found the mask when he got a chair to look up into the attic and that when he did he noticed this mask on the floor. The confusion was subsequently cleared up when the officer, on cross-examination, stated that he found the mask on the floor of the *893 closet. The jury's question was, therefore, pertaining to a material issue which would have been readily resolved by reading this testimony to them. Compare Nelson v. State, 1941, 148 Fla. 338, 4 So.2d 375. Section 919.05, Florida Statutes, F.S.A., provides that if the jury shall have any doubt or disagreement about any testimony, the court shall order such testimony read to them. Although the statute contains mandatory words, it has been construed to vest in the trial court discretion as to the extent and circumstances in which it may be employed. Lutins v. State, 1940, 142 Fla. 288, 194 So. 803.
The State contends that the defendant made no objection to the trial court's refusal to have portions of the testimony read to the jury at their request, and that this point was first raised in the motion for new trial. Therefore, the State urges that this court should refuse to consider this point on appeal, citing Bates v. State, Fla.App. 1958, 102 So.2d 826. In the Bates case it was held that, having raised the question for the first time on his motion for a new trial, the defendant had not properly preserved the question, and the court said (text at p. 830):
"* * * The error, if it was such, in rejecting the request of the foreman * * * was not * * * preserved for review. Nor do we consider the error, if any, of such a fundamental character as to warrant our consideration in the absence of being properly preserved. * * *"
We consider the court's refusal to have this testimony read to the jury, pursuant to their request, such a fundamental error as to require our consideration. See Penton v. State, Fla.App. 1958, 106 So.2d 577, wherein the court, speaking through Judge Shannon, said:
"We realize that the question is a close one but we also realize that there was considerable doubt in the jury's mind concerning the very testimony which they wished read to them and this testimony was material to the case. The testimony was taken down and the failure of the court to have it read back to the jury at their request was error, and by the very nature of the testimony the error was not harmless, as it was in Bates v. State, supra, and Nelson v. State, supra."
We conclude, therefore, that the trial court erred in refusing the jury's request, and after examination of the entire record, we find that this error injuriously affected the substantial rights of the defendant. The judgment is reversed.
Reversed.
ALLEN, Acting C.J., and KANNER, J., concur.
NOTES
[1] For similar evidence held by our courts to be insufficient, see Benton v. State, 1937, 127 Fla. 206, 172 So. 858; Head v. State, Fla. 1952, 62 So.2d 41; and Williams v. State, Fla. 1962, 143 So.2d 484.