FERGUSON, Judge.
The dispositive question in this case is whether it was error to present to a jury, in a trial for grand theft, evidence of a theft committed by appellant in another state.
Appellant was convicted for the theft of a diamond ring having an alleged value of $20,000 to $25,000. The undisputed evidence as to the circumstances surrounding the subject larceny is as follows.
The victim, owner and operator of Snow’s Jewelry in Coral Gables, Florida, came into possession of an expensive pear-shaped diamond ring on consignment sometime in late December, 1980 or early January, 1981. A few days later, two well-groomed men entered the victim’s store and asked to look at diamond rings, one of which was the subject ring. The two men ultimately examined the diamond in a very professional fashion, recording information in a little notebook. The victim testified that he did not think this unusual, as he believed the two men to be professional competitors who may have been canvassing his store for information on inventory and prices — a common practice in the trade. After the two men had completed their examination, they returned the diamond and left. The victim was sure that the ring returned to him was the same ring that the men had examined because the diamond had recently been placed into a new setting which was still unfinished.
Several days later, between January 17, 1981 and January 19, 1981, appellant and a female companion entered the store. The female asked to look at several diamond rings. One of the rings eventually examined by her was the same diamond ring that had been examined by the two men several days earlier. After looking at the ring for a period of time, the female returned a ring which the storeowner thought to be his. He put it in his pocket without examining the stone because it was tagged and marked with inventory information that looked like his. He later discovered that the original diamond shown to the couple was missing and had been replaced by a fake. Attached to the fake ring was a counterfeit tag which was a “reasonable facsimile” of the victim’s price tags, bearing the correct inventory number.
The state produced evidence, determined by the court in a pretrial hearing as admissible pursuant to Section 90.404, Florida Statutes (1981),[1] of an offense committed by appellant in California. The evidence of that offense, and the subject of this appeal, is as follows.
One or two weeks prior to March 4, 1981, appellant and a female companion entered the Omega Jewelry store in California stating that they wanted to buy a diamond. The operator, Mrs. Shin, showed them several diamonds — a round cut, a pear-shaped and an emerald cut. They examined the jewelry carefully, then left the store without buying.
On March 4, 1981, appellant and his female companion returned to the store and again asked to look at diamonds. The operator became very suspicious because the female was attempting to keep her busy and confused while examining and asking prices about many diamonds. When the couple started to leave the store, having made no purchases, she suspected that one of the rings returned to her was not a diamond. She confirmed this suspicion after looking at the ring under a microscope, then had the guard lock the front door of the store to prevent the couple from leaving. Police officers arrived and conducted a search of appellant and his companion. They found in appellant’s possession two rings which belonged to the Omega Jewelry *1031 store. Mrs. Shin testified that two fake rings had been returned to her by the couple, their counterfeit tags bearing the same price and inventory information as the tags on the store’s jewelry. A search of the female companion revealed that she was wearing the diamond ring that had been stolen from the Coral Gables store in January, 1981.
The trial court was eminently correct in admitting evidence of the California crime in the trial for the Coral Gables theft. The modus operandi in both offenses was identical and unique. The identity of the perpetrators having been established to a certainty in the California offense, the evidence of the modus operandi and appellant’s participation in that offense was relevant and admissible on the issue of identity in the Florida trial.
In two recent cases, State v. Maisto, 427 So.2d 1120 (Fla. 3d DCA 1983) and Sias v. State, 416 So.2d 1213 (Fla. 3d DCA), rev. denied, 424 So.2d 763 (Fla.1982), we approved admission of similar offense evidence bearing “hallmark” or “signature” characteristics. Those cases are authority for the decision we reach in this case.
A duty of the courts in determining the admissibility of similar crime evidence is to insure that its relevancy does not go solely to the propensity or character of the accused, and that the evidence is not rendered inadmissible by some other specific rule of exclusion, e.g., Section 90.403, Florida Statutes (1981) (evidence inadmissible where prejudicial effect outweighs probative value). See Moreno v. State, 418 So.2d 1223, 1225 n. 2 (Fla. 3d DCA 1982), setting forth other examples of relevant but inadmissible evidence. This is perhaps one of the few similar crime evidence cases where, in the balance, the question of admissibility is not even close.
The remaining issues are without merit.
Affirmed.

. Section 90.404(2)(a), Florida Statutes (1981) provides:
(2) OTHER CRIMES, WRONGS, OR ACTS.—
(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.